## Case No. 15,125.

### UNITED STATES v. FOLSOM.

[Hoff. Dec. 42.]

District Court, N. D. California. 1859.

MEXICAN LAND GRANT—CONFIRMATION BY BOARD OF COMMISSIONERS—CONCLUSIVENESS.

[If the board of commissioners, in confirming a claim, were misled by the compass marks, or by any other accurate representation on the diseño so that they described boundaries which, when run upon the ground, are found to include a different tract from that described in the grant and delineated on the diseño, the error should be rectified by the court when the survey is submitted for approval.]

[This was a claim by the executors of J. L. Folsom to the Rancho Rio De Los Americanos. The grant was confirmed by the board. Appeal taken by the government; but not prosecuted. Subsequently a motion was made that the survey made in conformity with the decision of the board be brought into court and confirmed. Case No. 15,127.]

HOFFMAN, District Judge. The grant in this case was for eight square leagues of land on the banks of the American river, bounded by the land granted to the colony of Señor Sutter, and by the ranges of hills to the east. In the petition the tract is described as bounded by the lands of Señor Sutter, as shown by the map thereto annexed: "Said place is on the bank of the American river, and consists of four leagues in length towards the east, and two in breadth towards the south." The decree of the board describes the land confirmed to the claimants as follows: "Beginning at an oak tree on the bank of the American river, marked as a boundary to the lands granted to John A. Sutter, and running thence south to the line of said Sutter, two leagues; thence easterly, by lines parallel to the general direction of the American river, and at the distance, as near as may be, of two leagues therefrom, four leagues, or so far as may be necessary to inclose in the tract eight square leagues; thence northerly, by a line parallel to the

one above described, to the American river; thence, along the southern bank of said American river, and bounding thereon, to the point of beginning." The appeal from this decree having been dismissed by consent of the attorney general, a survey of the tract confirmed was made in May, 1857. This survey appears to have been acquiesced in by the United States until September, 1858, when instructions for a new survey were issued by the executive department, in accordance with the opinion of the secretary of the interior. A second survey has accordingly been made, and it is now before the court on exceptions.

The claimants contend that the first survey is substantially correct, and should be adopted by the court. If the petition, the grant, and the diseño be alone consulted, the intention of the governor and the true location of the tract would seem obvious and unmistakable. There can be no doubt that the land was to be a tract four leagues in length, by two in breadth, lying on the southern bank of the American river, and commencing at the eastern boundary of Sutter's land. The position of this boundary line is not disputed. The location of the tract would, therefore, seem certain and easy. But the terms of the decree of the board have given rise to a difficulty which, had the topography of the country been accurately ascertained, would not have occurred. On the diseño the American river is represented as running in direction nearly east and west, until at Alder creek, where it turns abruptly to the north. By the scale of the diseño, the four leagues which were to be the longitudinal extension of the grant terminate at or near Alder creek. It was therefore supposed that the two side lines would run in a north and south direction, perpendicular to the supposed course of the river, while the back line was to be run parallel to it, and in such a way as to include, when the meanderings of the river were computed, the required quantity of eight leagues. The course of the boundary line of Sutter, which was the western boundary of the tract, was admitted to be north and south. The decree, therefore, directed the opposite side line, or eastern boundary, to be also run due north and south, and parallel with the western boundary. On making the survey it was found that the general course of the river was not east and west, but southwest and northeast. The side lines, therefore, if run in a north and south direction, cannot be perpendicular, as supposed, to the general course of the stream. It has also been found that, if a line be measured from the western boundary, in a direction parallel to the general course of the river, to a point four leagues distant from the western boundary, and through the points of termination of this line a due north and south line be drawn for the eastern boundary, the latter will strike the river, not only far above Alder creek, but

far above any portion of the stream represented on the diseño. For, the course of the river bending abruptly to the north a short distance above Alder creek, a due north and south line, drawn as described, will run, for a considerable distance, not far from parallel with the river, and the northeastern portion of the track will take the form of a long and narrow tongue of land, running for more than two leagues along the river and due east from it, instead of south of it, as contemplated in the grant, and of an average breadth of considerably less than a league. That the survey must assume substantially this form if the eastern line be run due north and south, in literal compliance with the decree, must, I think, be admitted. But, on the other hand, it is plain that the tract so surveyed will, neither in its shape nor location, resemble that delineated on the diseño, and evidently intended to be granted by the governor. On the diseño Alder creek is represented as lying on the extreme eastern edge of the shaded portion of the map, which indicates the tract solicited. Beyond this creek the river is represented as extending in a nearly northerly direction, but the portion of the stream so represented is in length only about one-fifth of the whole of its course from the western boundary to the eastern edge of the map. But the portion of the river above Alder creek, included in the survey, is in length about six and a half sixteenths, or more than one-third of the whole. Again, the diseño represents Buffalo creek, and a very distinctly marked bend of the stream, as situated about the middle of the tract; whereas, on the survey, it is at the distance of a mile, less than one-third of the whole distance along the river from the western to the eastern boundary.

It has already been remarked that the intention of the governor to grant a tract four leagues in length along the river is too clear to be mistaken. Taking the most liberal view for the claimants, we may construe the grant to mean that a tract of that length shall be measured along the river in its general course, without computing the bends or abrupt elbows. Adopting, then, this mode of measurement, it is found that, from the western point of commencement to the eastern termination of the survey, the distance along the river is sixteen miles, or about six leagues, while, if the whole river front be measured, and the lands meandered, the distance is very considerably increased. It is therefore apparent that the survey under consideration not only extends the grant along the river to a distance much beyond what was contemplated in the grant, but that the eastern line strikes the river at a point very considerably above and to the northeast of any portion of the stream delineated on the map. The tract, also, as surveyed, is in shape wholly dissimilar to the rectangular piece of land, four leagues

long by two wide, lying on the south of the American river, represented on the diseño. For a distance of about two leagues it is located to the east of that river, and the width of this part of the survey is at no point greater than a league, and for a considerable distance less than half a league.

But it is contended that the decree under which the survey was made fixes the eastern boundary at a due north and south line drawn parallel to the western line; that the location of that line is, therefore, res judicata, and cannot now be disturbed. The decree of the board was drawn in advance of any survey, and without accurate knowledge of the course of the river or the topography of the country. The diseño was probably accepted as indicating, with tolerable exactness, the tract solicited; and as a north and south line would, according to the compass marks on the diseño, strike the river at about a right angle to its general course, such a line, drawn at the distance of about four leagues from the western boundary, was naturally fixed upon as the eastern boundary of the tract. But it having been found that the general course of the river is from northeast to southwest, and not from east to west, as indicated on the diseño, a north and south line fails, as we have seen, to strike the river at right angles to its general course, but will, if protracted until it reaches the river, run for a considerable distance nearly parallel to it, and will strike it far beyond the most easterly limits of the diseño. It appears to me, therefore, that the call in the decree for a north and south line as the eastern boundary should be construed to mean the north and south of the diseño; that is, perpendicular to the course of the river represented thereon as running from east to west. The decree itself refers to the grant and diseño for a more particular description of the tract. If, then, the diseño indicates a tract different in form and location from that surveyed, according to the description in the decree, there is an evident repugnance in the latter which is to be explained and reconciled by the court; that neither in this case nor in any other did the board mean to confirm the claim for any other tract than that described in the grant and delineated on the diseño, is clear, and if, misled by the compass marks, or by any other inaccurate representation on the diseño, they have described boundaries which, when run upon the ground, are found to include a different tract from that described in the grant and delineated on the diseño, the error should be rectified by this court when the survey is submitted for approval.

It was also contended by the United States that the Someiras, mentioned in the grant as the eastern boundary, are situated within and to the westward of the eastern line as surveyed. It is, however, clearly shown by the testimony of Goddard, and the accurate profile of the country exhibited by him, that a tract four leagues long and two wide may be laid off along the southern bank of the river, without passing beyond the range of foothills mentioned in the grant as the eastern boundary. It is also contended that the grant was, in fact, for six, and not for eight, leagues. Whatever force there may be in this suggestion, it is now too late to urge it. The quantity of eight leagues has been confirmed to the claimant, and the United States have recognized the correctness of the decree by dismissing the appeal from it, and consenting that the claimant proceed under it as under a final decree.

It is strenuously urged by the counsel for the claimants, and purchasers under them, that the original survey was long acquiesced in by the government; that sales have been effected and rights acquired on the faith of the admission of its correctness by the government; and that sales of public lands have even been made under the authority of the government or its agents, the purchasers under which would be injured if the survey is disturbed. But these considerations, though proper to be urged to the secretary of the interior, when solicited to approve the survey, cannot be regarded by the court when called upon under the act of 1860, to pass upon the correctness of a survey of a confirmed land claim. It is certainly to be regretted innocent parties have been injured by an incautious reliance on the correctness of a survey which, when their rights were acquired, had not received the final approbation either of the higher executive authority, or of the courts having jurisdiction on the subject. But the duty of the court, when the case is submitted, is clear, viz. to direct the survey to be made as in its judgment it ought to be done. It is proper to observe that the survey referred to in the foregoing opinion is the first official survey made in 1857, and approved by John C. Hays, surveyor general. The recent survey, made since the opinion of the secretary of the interior adverse to the Hays survey was delivered, is admitted by all parties to be erroneous.

My opinion is that the eight leagues confirmed to the claimant should be surveyed and located as follows: By drawing a line parallel to the general course of the American river through the center or main body of the tract, commencing at a point on the western boundary as established in both the surveys, and extending four leagues in length. Through the eastern termination of this line a line is to be drawn, at right angles to it, such line to be protracted until it reaches the river, and to extend in the opposite direction until it reaches a point two leagues distant along said line from the river. From this last-mentioned point a line is to be drawn to the termination of the western boundary, as laid down on the Hays survey, in such a way as to make the area

of the entire tract included within the boundaries, eight square leagues and no more. There will thus be measured off to the claimants a tract four leagues long, by two wide, along the southern bank of the American, in a form not far from rectangular, and as near as may be such as the grant and diseño clearly show was intended to be given him.

[Subsequently the survey of 1857 was finally approved. Case No. 15,126.]